IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : |
| RELIANT ENERGY CHANNELVIEW, | : Chapter 11 Case |
| LP, et al., | : |
| | : Case No. 07-11160 (MFW) |
| Debtors, | : Jointly Administered |
| | : |
| KELSON CHANNEL VIEW LLC | : |
| (f/k/a KELSON ENERGY IV LLC), | : |
| | : |
| Appellant. | : |
| | : |
| v. | : Civil Action No. 08-409-JJF |
| | : Bankruptcy Appeal No. 08-41 |
| RELIANT ENERGY CHANNEL VIEW, | : |
| LP, et al. | : |
| Appellees. | : |
| | : |
| | : |

Andrew K. Glenn, Esquire and Jeffrey R. Gleit, Esquire, KASOWITZ,
BENSON, TORRES & FRIEDMAN LLP, New York, New York.
Garvan F. McDaniel, Esquire, BIFFERATO GENTILOTTI LLC.,
Wilmington, DE.

Attorneys for Appellant.

Mark D. Collins, Esquire; Robert J. Stearn, Jr., Esquire; Paul N.
Heath, Esquire and Cory D. Kandestin, Esquire of RICHARDS, LAYTON
& FINGER, P.A., Wilmington, DE.

Attorneys for Appellees.

**MEMORANDUM OPINION**

March 31, 2009
Wilmington, Delaware.

**Farnan, District Judge.**

Pending before the Court is an appeal by Kelson Channelview LLC (f/k/a Kelson Energy IV LLC) ("Kelson") of two Orders of the Bankruptcy Court: (1) the March 18, 2008 Order approving the Debtors' request for certain bidding procedures for the auction of their assets, but expressly rejecting the Debtors' request for authorization of a $15 million payment to Kelson as a break-up fee (the "Bidding Procedure Order"), and (2) the June 9, 2008 Order approving the sale of substantially all of the Debtors' assets to GIM Channelview (the "Sale Order"). For the reasons discussed, the Court will affirm the Bankruptcy Court's Bidding Procedure Order and Sale Order.[1]

---

[1]     In addition, Kelson has filed a Motion To Strike Debtors' Supplemental Designation Of Additional Items To Be Included In The Record On Appeal (D.I. 19.) Kelson contends that the items offered by the Debtor for supplemental designation post-date this appeal, and therefore, they should not be considered by the Court. The Debtors agree with Kelson that no factual events occurring after this appeal should be considered by the Court, and more broadly contend that the Court should not consider any factual events following the Bankruptcy Court's March 18, 2008 entry of the Bidding Procedure Order, the only Order that the Debtors contend is truly relevant to this appeal. To the extent that the post-March 18, 2008 factual events identified by Kelson in its Opening Brief are considered by the Court on this appeal, the Debtors contend that the Court should allow a supplementation of the record to consider the designated items for purposes of creating a complete record. Because the documents identified by the Debtors are records of further judicial proceedings in this case, the Court will allow the supplementation and deny Kelson's Motion To Strike. See e.g., Selkridge v. United Omaha Life Ins. Co., 360 F.3d 155, 164 n.15 (3d Cir. 2004) (taking judicial notice of post-appeal developments in a related proceeding).

## I.   **PARTIES' CONTENTIONS**[2]

By its appeal, Kelson contends that the Bankruptcy Court
abused its discretion by applying an incorrect legal standard to
deny Kelson an administrative priority expense claim of $15
million (the "Break-Up Fee") under the Asset Purchase Agreement
("APA") entered into between Kelson and the Debtors.   Kelson
points out that its bid would have paid all creditors in full,
and the Break-Up Fee was supported by the Debtors' sole
shareholder, Reliant Energy, Inc., who did not want to conduct an
auction process.   Kelson also contends that the Bankruptcy
Court's decision violates the doctrine of fundamental fairness,
because Reliant obtained a $50 million "windfall" as a result of
the higher bid made by Fortistar, LLC ("Fortistar") at the
auction.   According to Kelson, Fortistar could have acquired the
business for a substantially lower price that may not have
resulted in any additional recovery to Reliant, but for Kelson's
stalking horse bid.   Thus, Kelson contends that Reliant was
unjustly enriched at Kelson's expense.   In addition, Kelson
contends that the Debtors should be estopped from opposing the
payment of the Break-Up Fee, because they previously supported
it.

---

[2]      Additional background relevant to this appeal is set
forth in the Court's previous Memorandum Opinion and Order (D.I.
14, 15) denying the Debtors' Motion To Dismiss.

In response, the Debtors contend that the Bankruptcy Court did not err in denying approval for the Break-Up Fee. In making this argument, the Debtors contend that the Court should not consider whether Kelson's bid stimulated competitive bidding activity and made Fortistar submit a higher bid, because these events occurred after the Bankruptcy Court approved the Bidding Procedure Order. The Debtors also point out that it is not contested that Fortistar was involved in the Debtors' sale process both before and after Kelson and the Debtors entered into the APA. Thus, the Debtors contend that Kelson's contention that its bid led to Fortistar's higher bid is speculation.

With respect to Kelson's argument relating to the doctrine of fundamental fairness, the Debtors contend that this argument cannot be considered on appeal, because it was not raised in the Bankruptcy Court. The Debtors also contend that the principles of estoppel and quasi-estoppel do not apply here, because the inconsistency in the Debtors' support for the Break-Up Fee is not the result of bad faith, and the Debtors complied with their obligations under the APA which included presenting the Break-Up Fee to the Bankruptcy Court and complying with the Bankruptcy Court's Order denying the Break-Up Fee and sanctioning an auction.

## II.   **STANDARD OF REVIEW**

The Court has jurisdiction to hear an appeal from the
Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  In undertaking
a review of the issues on appeal, the Court applies a clearly
erroneous standard to the Bankruptcy Court's findings of fact and
a plenary standard to its legal conclusions.  See Am. Flint Glass
Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d
Cir. 1999).  With mixed questions of law and fact, the Court must
accept the Bankruptcy Court's finding of "historical or narrative
facts unless clearly erroneous, but exercise[s] 'plenary review
of the trial court's choice and interpretation of legal precepts
and its application of those precepts to the historical facts.'"
Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635,
642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes
& Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  The appellate
responsibilities of the Court are further understood by the
jurisdiction exercised by the Third Circuit, which focuses and
reviews the Bankruptcy Court decision on a de novo basis in the
first instance.  In re Mullarkey, 536 F.3d 215, 220 (3d Cir.
2008) ("Our review of the District Court's ruling in its capacity
as an appellate court is plenary, and we review the bankruptcy
judge's legal determinations de novo.") (emphasis added); In re
Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).  Indeed, it is not
unusual as a procedural matter for the Third Circuit holding or

4

decision to directly address the Bankruptcy Court decision.[3]

## III. DISCUSSION

The parties are in agreement that the correct legal standard governing the award of break-up fees has been set forth by the Third Circuit in Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999). In O'Brien, the Third Circuit surveyed different approaches to break-up fees and concluded that none of the different approaches taken by other courts "offer[ed] a compelling justification for treating an application for break-up fees and expenses under § 503(b) differently from other applications for administrative expenses under the same provision." Id. at 535. The Third Circuit went on to state:

> We therefore conclude that the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence. In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate. Therefore, we conclude that the business judgment rule should not be applied as such in the bankruptcy

---

[3] In re Winstar Communications, Inc., -- F.3d --, 2009 WL 235676 (3d Cir. 2009) ("We therefore will affirm the Bankruptcy Court's decision, approved by the District Court, that the Trustee may recover the $188.2 million paid to Lucent.") (emphasis added).

context.  Nonetheless, the considerations that underlie
the debtor's judgment may be relevant to the Bankruptcy
Court's determination on a request for break-up fees
and expenses.

Id. (emphasis added).

Kelson seizes on language in O'Brien concerning the
application of this standard to argue that the "critical issue is
whether the fee provides *some benefit* to the debtor's estate."
(D.I. 18 at 10) (emphasis in original).  Although the Third
Circuit stated in O'Brien that the Section 503(b) inquiry
requires that an expense provide "some benefit to the debtor's
estate," the Court does not read this sentence to be a dilution
of the requirement that the fees be "actually necessary to
preserve the value of the estate."  Indeed, it is in the context
of whether the fee was actually necessary to preserve the value
of the estate that the Third Circuit examined whether there was a
benefit to the estate in the first instance.  Thus, the standard
enunciated in O'Brien to justify the approval of a break-up fee
is higher than that argued by Kelson.

Applying O'Brien to the circumstances of this case, the
Court cannot conclude that the Bankruptcy Court abused its
discretion in declining to award Kelson the Break-Up Fee.
Notably, Kelson did not condition its bid on the Bankruptcy
Court's approval of the Break-Up Fee.  Further, to the extent
that events post-dating the Bankruptcy Court's entry of the

6

Bidding Procedure Order are considered, the Court concludes that those events do not support Kelson's position.  Fortistar, the eventual successful bidder, was involved in the Debtors' sale process both prior to and after Kelson entered into the APA with the Debtors.  In the Court's view, Kelson's argument that its bid led Fortistar to make a higher bid is speculative, and the Court cannot conclude that such speculation is sufficient to justify the approval of a break-up fee.  O'Brien, 181 F.3d at 537; see also In re Bernard Techs., 342 B.R. 174, 177 (Bankr. D. Del. 2006).

To the extent Kelson's arguments premised on estoppel and the doctrine of fundamental fairness are considered, the Court concludes that the application of these doctrines is not supported here.  The Third Circuit requires a Section 503(b) analysis for break-up fees, and the Court finds no support in the case law for supplanting this statutory analysis with an equitable one.  O'Brien, 181 F.3d at 532 (declining to develop a general common law of break-up fees and noting instead that the provisions of the Bankruptcy Code govern).  Kelson relies on In re Women First Healthcare, Inc., 332 B.R. 115 (Bankr. D. Del. 2005) to support its argument; however, that case did not involve the payment of a break-up fee and instead applied the doctrine of fundamental fairness to allow the payment of an administrative claim for a tort committed by the debtor.  Indeed, in Women

7

First, the court reiterated the principle from O'Brien that "in the context of break-up fees, the Bankruptcy Court may not 'create a right to recover from the bankruptcy estate where no such right exists under the Bankruptcy Code.'"  Id. (quoting O'Brien, 181 F.3d at 532).

Further, the Court cannot conclude that the evidence demonstrates bad faith on the part of the Debtors concerning their position on the Break-up Fee such that principles of estoppel should be applied.  Montrose Med. Group Participating Savs. Plan v. Bulger, 243 F.3d 773, 779-781` (3d Cir. 2001).  Accordingly, the Court will affirm the Orders of the Bankruptcy Court.

## IV.  CONCLUSION

For the reasons discussed, the Court will affirm the March 18, 2008 and June 9, 2008 Orders of the Bankruptcy Court.

An appropriate Order will be entered.